BARRON, J.
(ADLOW, J. concurring) This is an action of contract in which the plaintiffs, co-partners, seek to recover the purchase price of $2,141.65, plus $201.90 shipping charges paid to the defendant under an agreement to sell to the plaintiffs 6,119 pairs of Ladies Assorted Leatherbury Shoes. Count 2 is for $2,343.55, money received by the defendant to the plaintiffs’ use, according to an account annexed, as herein recited. The answer was a general denial, payment and failure to give notice of breach of warranty. The court found for the plaintiffs in the sum of $348.60.
There was evidence tending to show that, on "or about January 6, 1950, the plaintiffs came to Boston to purchase ladies’ shoes and went to the defendant’s place of business. One of the plaintiffs testified that he told the defendant that they wished to buy ladies shoes; that the defendant told the plaintiffs that he had just purchased the complete stock of the Leather-bury Shoe Stores in Florida, which consisted of 6,119 pairs of Ladies Assorted Leatherbury Shoes; that he offered to sell these shoes to the plaintiffs for $.35 a pair; that if the plaintiffs wanted to get them at that price, they would have to act immediately; that defendant gave the plaintiffs a pamphlet of the Leatherbury Shoe Company, showing Ladies Leath-erbury Shoes, (which pamphlet is an exhibit and part of the report) and stated the shoes were the same as those located in Miami; that the plaintiffs told the *[97] defendant they would like to buy the ladies’ shoes, but would have to wait until the following day to see if they could find a purchaser for them, but would communicate their decision to the defendant the following day.
The plaintiffs then returned to New York, procured a buyer for 6,000 pairs of Ladies Assorted Leatherbury Shoes and on January 7, 1950, sent the following telegram to the defendant:
“A. S. Shoe Company, 203 Essex Street, Boston, Mass.
Have sold 6,000 pairs shoes as shown upon pamphlet. Will be Boston Tuesday. A. & H. Shoe Company, 1305 Franklin Avenue, Bronx, New York.”
The plaintiff, Hockberger, further testified that on January 12, 1950, the plaintiffs came to Boston, paid to the defendant $1000. as a deposit against the purchase price, the balance to be paid cash on delivery. The defendant, however on January 16th drew a sight draft for the balance upon the plaintiffs in the sum of $1,141.65 which was paid in full upon demand by the plaintiffs’ check on January 27, 1950. On January 18, 1950, the defendant sent the following invoice to the plaintiffs:
“A. S. Shoe Company, 203 Essex Street, Boston 11, Mass., Inv. No. 4896
t January 18, 1950
Sold to: A. & H. Shoe Company
1305 Franklin Avenue, Bronx; New York
F.O.B. Boston Via Dept. No. Order No. Terms
Case No. Stock No. Pairs Description Price Amount Total
6,119 Ladies Assorted Leatherbury Shoes, retail stock of Beth Shoe Store, Miami, Florida, as is.
.35 2,141.65
Deposit 1,000.00
SHIPPED C.O-D. BALANCE 1,141.65
The shoes were received by the plaintiffs and the plaintiffs paid the further sum of $201.90 for freight charges.
The shoes arrived at the plaintiffs’ place of business on February 3, 1950 and were shipped unopened to the plaintiffs’ purchaser. On February 6, 1950, the goods were returned to the plaintiffs..
*[98] The plaintiffs further testified that on February 7, the plaintiffs came to Boston and told the defendant that he had broken his agreement with them; that of the 6,119 pairs of shoes, there were sandals, and 996 pairs of children’s shoes and beach sandals; and that the shoes were not Ladies Assorted Leatherbury Shoes as represented and as set forth in the invoice and demanded that the defendant take the shoes back and refund the purchase price. The defendant thereupon told the plaintiffs to go ahead and sue for their money. By letter to the defendant dated February 9, 1950, the plaintiffs elected to rescind their contract with the defendant and made a demand for the return of the purchase price.
The defendant testified that he told the plaintiffs at the trial of the first visit that he had bought out three Leatherbury Stores in Florida, and that he did not know what was there; that there were between 5,000 and 6,000 pairs of Ladies’ shoes and that the sizes were bad and that he had an inventory; that he showed the inventory sheets to the plaintiff, Hock-berger, and explained that these were the sizes and the stock; that the plaintiff, Hockberger, picked up a pamphlet and the defendant stated that it did not represent the shoes; that Hockberger stated he wished to have the pamphlet to take to New York to show to customers; that the defendant then offered to sell the shoes at $.35 a pair.
He also testified that he did not know that there were children’s shoes in the lot which were shipped and that upon receiving notice that there were he offered to pay back the money on the children’s shoes; that other than 996 pairs of children’s shoes delivered to the plaintiffs the balance of the shoes were Ladies Assorted Leatherbury Shoes.
The plaintiff filed requests for rulings. The court made the following dispositions for certain of these requests:
1. On all the evidence judgment should be for the plaintiff because:
(a) The shoes shipped by the defendant failed to conform to the description and sample on the basis of which the plaintiff ordered the shoes.
(b) The shoes did not comply with the defendant’s warranty that they were "Ladies Leatherbury Shoes.” Denied.
*[99] 2. Where goods are ordered by sample and/or description, if the goods fail to conform to the sample or description, the buyer may rescind .the sale and secure a refund of the entire purchase price. Granted. I find on the facts, however, that no specified number of ladies’ shoes were agreed upon to be delivered and that other than 996 children’s shoes which were sent by mistake and upon which defendant was ready at all times to refund payment, the bulk of the shipment, to wit: 5123 ladies shoes conformed to the samples and description.
3. Where the seller makes descriptive statements concerning the merchandise ordered, such statements constitute a warranty. Granted.
4. If the defendant described the above shoes to the plaintiff as Leatherbury Ladies Shoes, he is liable to the plaintiff for breach of warranty if the shoes delivered were not ladies shoes or were not Leatherbury shoes. Denied. Inapplicable.
The plaintiffs claim to be aggrieved by:
1. The denial of the requests for rulings of 1 and 4 and to the judge’s rulings and findings modifying Request 2.
2. The judge’s ruling that no specified number of ladies’ shoes was agreed upon.
3. The denial of the judge to grant recission.
4. The failure of the judge to award the plaintiffs adequate damages.
5. The judge’s finding that the 996 children’s shoes were sent the plaintiffs by mistake.
The court’s finding of fact that in the shipment of shoes which the defendant sent to the plaintiffs, were 996 children’s shoes, which were sent by mistake, conclusively indicates that under the agreement between the plaintiff and the defendant no children’s shoes were ordered by the planitiff; and therefore the shipment of shoes “failed to conform to the description on the basis of which the plaintiffs ordered the shoes, and did not comply with the defendant’s warranty that they were ‘Ladies’ shoes.’ See request No. 1.
An examination of the inventory (Exhibit 8) fails to show as the correct number of pairs of shoes agreed to, either 996 pairs of children’s shoes, (although some children’s shoes are indicated), or the number of 5,123 ladies’ shoes, which were shipped in the same lot as the 996 pairs or children’s shoes; or 6,119 pairs *[100] of shoes, as shown on the invoice sent by the defendant. The defendant testified that the inventory showed the sizes and stock. If the agreement was, as the defendant alleges, to sell what he got under the inventory, then there was a violation of the agreement by the defendant, because the shipment did not correspond to the inventory, and the plaintiff would be entitled to rescission. But since the court found that no children’s shoes were ordered, and the inventory includes children’s shoes, it is obvious that the trial justice did not find that the agreement to buy was according to inventory.
What was the agreement then? It can be ascertained from the invoice which the defendant prepared and which shows clearly the sale of 6,119 pairs of ladies shoes at a specified price of 35c each, and from the sight draft which was drawn at the direction of the defendant which also calls for payment of 6,119 pairs of shoes as per invoice. If this was the agreement, then there was a breach of waranty committed by the defendant, since only 5,123 pairs of ladies shoes were delivered, and the plaintiffs are entitled to rescission and a return of the money advanced by them.
In the case of a breach of warranty, the buyer has the right to “rescind the contract to sell or the sale and refuse to receive the goods, or if they have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.” G. L. c. 106, § 58 (1) (d); Boles v. Merrill, 173 Mass. 491, 494-5. If on the other hand it is agreed that only 5,123 pairs of ladies shoes were to be delivered then the defendant has committed a breach by delivering to the plaintiffs a shipment which contained children’s shoes as well as ladies shoes.
“If the . seller delivers to the buyer the goods which he contracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest or he may reject the whole.” G. L. c. 106, § 33 (3).
Under the Sales Act a buyer is not obliged to correct a seller’s mistake and only partially rescind a contract. He is entitled to complete rescission, if the seller errs in making up the shipment either in amount or type or merchandise.
*[101] The defendant has argued that there can be no rescission because the plaintiff resold the merchandise. Although this is generally true, there is an exception “if the buyer has taken the goods back from the sub-purchaser and offers them uninjured to the seller, rescission seems permissible.” 1 Williston Sales Rev. Ed. § 610 n. 16. Norry v. Electric Arc Ind. 185 NJL. In the opinion of the majority, there is error. Let a finding be made for the plaintiff on count 2 of plaintiffs’ declaration in the amount of $2,343.55.
* * *